**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FAWZI KHALID ABDULLAH FAHAD AL ODAH,

       Petitioner,

v.

UNITED STATES OF AMERICA, *et al.*,

       Respondents.

Civil Action No. 13-1420 (CKK)

**MEMORANDUM OPINION**
(August 3, 2014)

Petitioner Fawzi Khalid Abdullah Fahad al Odah petitions this Court for a writ of habeas corpus and, in addition or in the alternative, for declaratory judgment and associated injunctive relief and mandamus. Presently before the Court is Respondents' [21] Response to Petition for Writ of Habeas Corpus and Motion to Dismiss or for Judgment as a Matter of Law. Upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole, the Court DENIES Petitioner's [2] Petition for Writ of Habeas Corpus and Declaratory Judgment and GRANTS Respondents' [21] Response to Petition for Writ of Habeas Corpus and Motion to Dismiss or for Judgment as a Matter of Law. Accordingly, this action is DISMISSED in its

---

[1] Pet. For Writ of Habeas Corpus & Decl. J., ECF No. [2] ("Pet."); Resp. to Pet. for Writ of Habeas Corpus and Mot. to Dismiss or for J. as a Matter of Law, ECF No. [21] ("Resps.' Mot."); Petr.'s Opp'n to Resps.' Resp. to Pet. for Writ of Habeas Corpus and Mot. to Dismiss or for J. as a Matter of Law, ECF No. [23] ("Petr.'s Opp'n"); Petr.'s Notice of Suppl. Auth., ECF No. [28]; Reply in Supp. of Resp. to Pet. for Writ of Habeas Corpus and Mot. to Dismiss or for J. as a Matter of Law, ECF No. [29] ("Resps.' Reply"); Petr.'s Notice of Suppl. Filing in Supp. of his Pet. for Writ of Habeas Corpus and in Opp'n to the Gov't's Mot. to Dismiss, ECF No. [30] ("Petr.'s Suppl."). In an exercise of its discretion, the Court finds that holding oral argument on the instant motion and petition would not be of assistance in rendering a decision. See LCvR 7(f).

entirety. Petitioner's first claim for relief is DISMISSED WITHOUT PREJUDICE for lack of ripeness. Petitioner's second claim for relief is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

### A. Factual Background

Petitioner Fawzi Khalid Abdullah Fahad al Odah ("al Odah") is a Kuwaiti citizen who has been detained by U.S. military forces at Guantanamo Bay, Cuba since 2002. Pet. ¶ 2. Respondents, the United States of America, President Barack Obama, U.S. Secretary of Defense Chuck Hagel, and Rear Admiral Richard W. Butler, are allegedly responsible for Petitioner's detention. *Id.* ¶ 3.

Petitioner was born in Kuwait City, Kuwait in 1977 and worked as a teacher prior to traveling to Afghanistan in 2001. *Id.* ¶ 7. In August 2001, he traveled to Spin Buldak, Afghanistan, and later to Kandahar, to Logar Province, to Jalalabad, and finally to Tora Bora. *Id.* Petitioner was taken captive by Pakistani border guards in Tora Bora, Afghanistan in December 2001, and was subsequently turned over to U.S. military forces in the region. *Id.* Petitioner was transferred to the detention facility at Guantanamo in early 2002 and has remained in custody there for more than twelve years. *Id.* ¶ 8.

In May 2002, al Odah petitioned this Court for a writ of habeas corpus on grounds that he was not, in fact, an enemy combatant and that his detention was therefore unlawful. *Id.* ¶ 11. Although he denied taking any part in hostilities against the United States or its allies, on August 24, 2009, after a three-day merits hearing, this Court denied his petition and held that, based on the preponderance of the evidence, more likely than not Petitioner had been part of the Taliban and Al Qaeda forces operating in Afghanistan, and therefore had been properly classified and detained as an enemy combatant pursuant to the Authorization for Use of Military Force

("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001). *Id.* ¶¶ 11-14; *Al Odah v. United States*, 648 F. Supp. 2d 1 (D.D.C. 2009). This Court found that the "evidence reflect[ed] that Al Odah made a conscious choice to ally himself with the Taliban . . . ." *Al Odah*, 648 F. Supp. 2d at 15. This Court found al Odah's explanations unconvincing and "incredible" in the face of "evidence [that] reveal[ed] that he moved ever closer to the fighting and repeatedly accepted directions from those affiliated with the Taliban." *Id.* On June 30, 2010, the D.C. Circuit affirmed this Court's decision, finding that the evidence was so strong as to sustain this Court's findings "regardless of the standard of review." *Al Odah v. United States*, 611 F. 3d 8, 16 (D.C. Cir. 2010). The Court of Appeals noted that the record was "above and beyond what [was] necessary . . . to affirm [this Court's] conclusion that al Odah was 'part of' al Qaeda and Taliban forces." *Id.* at 17. On April 4, 2011, the Supreme Court denied Petitioner's petition for writ of certiorari. *Al Odah v. United States*, 131 S. Ct. 1812 (2011). Petitioner alleges that there has been no finding that he ever fired a weapon at the United States or allied forces or ever took any specific hostile action. Pet. ¶ 16. He also alleges that there has been no finding that he participated in or planned the 9/11 attacks or any other operation of Al Qaeda or any other terrorist group. *Id.* Petitioner alleges that he has been detained on the basis that he was, at most, a low-level food soldier in Northern Afghanistan. *Id.*

Petitioner now points to Respondents' plans to end active combat in Afghanistan in the near future. *Id.* ¶¶ 25-28. In his 2013 State of the Union Address, Respondent President Barack Obama stated that "[b]y the end of [2014] our war in Afghanistan will be over." *Id.* ¶ 26. Petitioner notes that Respondents have taken concrete steps to implement the withdrawal of U.S. troops, including transferring control over U.S. detention facilities housing Afghan detainees at Bagram Airfield to the Afghan government and turning over Afghan districts to Afghan security

control. *Id.* ¶ 27. Petitioner states that "[i]t is therefore reasonable to conclude that, by the end of 2014, active hostilities between the United States and opposing forces [in Afghanistan] will have ceased." *Id.* ¶ 28.

## B. Procedural History

On September 18, 2013, Petitioner filed a Petition for Writ of Habeas Corpus and Declaratory Judgment. Petitioner first asks that this Court order his immediate release and repatriation upon cessation of active hostilities in Afghanistan, and, by writ of mandamus, order Respondents to immediately design, put in place, and implement the military and administrative procedures that will assure such timely release. *Id.* ¶ 44. Petitioner seeks his release from detention pursuant to the Great Writ as preserved by the United States Constitution, Art. I, § 9, and the federal habeas corpus statute, which is codified at 28 U.S.C. § 2241, *et seq.* *Id.* ¶ 4. Petitioner asserts that combat operations in Afghanistan are likely to conclude by the end of 2014, at which time his continued detention at Guantanamo will no longer be lawful under the AUMF. *Id.* ¶¶ 41-42. In addition, or in the alternative, Petitioner seeks injunctive relief and mandamus and asks that this Court find that his continued detention serves a predominantly punitive purpose, which cannot be justified under the AUMF, and order his immediate release. *Id.* ¶¶ 46-48.

Respondents subsequently filed a Response to Petition for Writ of Habeas Corpus and Motion to Dismiss or for Judgment as a Matter of Law. Petitioner then filed an Opposition, and Respondents filed a Reply. In addition, on June 2, 2014, Petitioner filed a Notice of Supplemental Filing in Support of his Petition for Writ of Habeas Corpus and in Opposition to the Government's Motion to Dismiss. This filing provides public statements by various federal

government officials, including Respondent Obama, that address the approaching end of hostilities in Afghanistan.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Respondents move to dismiss Petitioner's first claim pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that the claim is not ripe and the Court thus lacks subject matter jurisdiction. Resps.' Mot. at 5-13. "Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have subject matter jurisdiction over a case. *Id.* at 377. To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for

failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

## B. Rule 12(b)(6)

Respondents move to dismiss the remainder of the Petition on the grounds that Petitioner has failed to state a claim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

### A. Petitioner's First Claim for Relief

Petitioner first contends that his detention pursuant to the AUMF will be without legal justification upon the cessation of active military hostilities by U.S. and allied forces against the Taliban and Al Qaeda in Afghanistan. Pet. ¶ 41. Petitioner requests that the Court order that he

be released immediately upon cessation of active hostilities in Afghanistan, and, by writ of mandamus, order Respondents to immediately design, put in place, and implement the military and administrative procedures that will assure such timely release. *Id.* ¶ 44.

For the reasons discussed below, the Court rejects Petitioner's first claim for relief. Petitioner's claim is not ripe because it is dependent on future events that may not occur as anticipated, or may not occur at all. For purposes of this claim, Petitioner does not allege that he is currently unlawfully detained, but rather that he will be unlawfully detained once the United States' war in Afghanistan has come to an end. Such future unlawful detention, however, is speculative, as Petitioner's claim relies upon the assumption that the government will not release him once it no longer has the authority to detain him under the AUMF. Accordingly, Petitioner's first claim is not ripe and this Court lacks jurisdiction to rule on it. It necessarily follows that Petitioner's request for writ of mandamus is barred because without jurisdiction over Petitioner's first claim, this Court does not have jurisdiction over this related request, as the All Writs Act does not provide an independent basis for jurisdiction.

## 1. Ripeness

The Court first addresses the ripeness issue. Although the parties agree that Petitioner is entitled to bring a petition for a writ of habeas corpus pursuant to the Supreme Court's holdings in *Rasul v. Bush*, 542 U.S. 466 (2004), and *Boumediene v. Bush*, 553 U.S. 723 (2008), Respondents challenge the justiciability of Petitioner's first claim for relief, contending that this claim is not yet ripe for review. *See* Resps.' Mot. at 2. Petitioner asserts that his detention will no longer be authorized once the United States is no longer engaged in "active hostilities" in Afghanistan. Petr.'s Opp'n at 13. However, at least for purposes of his first claim, Petitioner does not assert that his current detention is unlawful. *See* Pet. ¶ 17 ("While Petitioner continues

to deny that he became part of Taliban and/or Al Qaeda forces . . . he accepts for purposes of the instant action that this Court's prior factual findings are conclusive."). Rather, Petitioner argues that he is entitled to relief because his detention *will* become unlawful upon the cessation of hostilities in Afghanistan. *Id*. ¶ 41 ("Petitioner's detention pursuant to the AUMF *will be* without legal justification upon the cessation of active military hostilities between U.S. and allied forces against the remnants of the Taliban and Al Qaeda in Afghanistan.") (emphasis added). Petitioner alleges that he will "inevitably suffer injury, in the form of unlawful detention, if he is forced to wait until combat operations actually end to begin to challenge the legality of his detention." Petr.'s Opp'n at 6. Respondents answer that Petitioner's claim rests on "an assumption that the Government will fail to transfer him when hostilities have ceased such that detention authority under the AUMF, as informed by the laws of war, lapses." Resps.' Reply at 2. The Court agrees. Petitioner's apparent speculation about what *might* occur at the end of hostilities possesses neither the immediacy nor the reality to warrant judicial relief at this time.

Ripeness doctrine counsels that courts should refrain from deciding cases where the complaining party's injury is speculative, and may never occur, as review of such cases would be premature. *See Abbott Labs v. Gardner*, 387 U.S. 136, 148-149 (1967). A case is ripe "when it presents a concrete legal dispute [and] no further factual development is essential to clarify the issues . . . [and] there is no doubt whatever that [the issue] has crystallized sufficiently for purposes of judicial review." *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) (citation omitted). A claim is not ripe, however, "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Ripeness is a requirement of justiciability which includes both constitutional and prudential considerations. *American Historical Ass'n v.*

*National Archives and Records Admin.*, 516 F. Supp. 2d 90, 103 (D.D.C. 2007). In assessing ripeness, the Court must balance "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

Here, the Court concludes that Petitioner's first claim for relief is not yet fit for review. In *Devia v. NRC*, the D.C. Circuit discussed the appropriate standard for such analysis, concluding:

> Even though the legal issues may be clear, a case may still not be fit for review: [T]he question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for a the court to undertake the task. Federal courts cannot – and should not – spend their scarce resources on what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe.

492 F. 3d 421, 424-425 (D.C. Cir. 2007) (quoting *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63, 72 (1st Cir. 2003)). In *Devia* the court held that the resolution of the petitioner's challenge of a decision by the Nuclear Regulatory Commission to grant a license "ha[d] all the earmarks of a decisions that 'we may never need to' make." *Id*. at 425 (quoting *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)). The Court found it "too speculative whether the validity of the NRC license is a problem that will ever need solving" because the chances of the project ever being able to proceed were simply unknown. *Id*. at 426 (internal citation omitted).

The same principles apply here. Petitioner asserts that his detention *will* be unlawful upon the cessation of hostilities in Afghanistan. Pet. ¶ 41. However, he provides nothing beyond speculation to support his claim that such unlawful detention will actually occur. Petitioner places great importance on the fact that President has indicated that the war in Afghanistan will be over by the end of this year. *See* Petr.'s Opp'n at 11-12. Yet Petitioner does

not credibly contend, nor is there any evidence in the record to suggest, that the President or any other United States government agent intends to detain designated enemy combatants unlawfully beyond the cessation of hostilities. Rather, various statements in the record, cited by Petitioner, support the conclusion that the President and other federal government officials *do not* intend to detain Petitioner once hostilities in Afghanistan cease. *See* Petr.'s Opp'n, Ex. A (President Obama's 2014 State of the Union Address) at 11 ("[W]ith the Afghan war ending, this needs to be the year Congress lifts the remaining restrictions on detainee transfers and we close the prison at Guantanamo Bay"); *id.*, Ex. C (Remarks by President Obama at the National Defense University) at 8 ("In Iraq, we turned over thousands of prisoners as we ended the war."); *id.* at 9 ("To the greatest extent possible, we will transfer detainees who have been cleared to go to other countries"); Petr.'s Suppl., Ex. CC (Transcript of President Obama's May 29, 2014 Interview with National Public Radio) at 10 ("I think it is very important for us to close Guantanamo. I think it is very important as we end the war that originally gave – gave life to Guantanamo that we now wind it down."). Moreover, Petitioner himself cites to the fact that more than 6,000 detainees were released and another 1,400-1,600 more were transferred to the custody of the government of Iraq as part of the pullout from Iraq. Petr.'s Opp'n at 12-13. Such evidence undermines Petitioner's assumption that he will be detained unlawfully at the conclusion of hostilities in Afghanistan. The same can be said of Petitioner's citations to the Army Field Manual and the Geneva Conventions, which require prompt repatriation of prisoners of war upon the end of active hostilities. *Id.* at 20-21. Furthermore, Respondents note that the Periodic Review Board ("PRB") process established by Executive Order 13,567 has begun, and the PRB will review Petitioner's case and "make a prompt determination . . . as to whether [his] continued detention is warranted." Resps.' Reply at 13 (quoting Exec. Order No. 13,567 at § 3(a)(7), 76

F.R. 13277 (Mar. 7, 2011)). Respondents state that "[s]hould the PRB make a determination to transfer Petitioner, 'vigorous efforts [will be] undertaken to identify a suitable transfer location,' and Petitioner may be transferred even before the end of hostilities." *Id.* (quoting Exec. Order No. 13,567 at § 4(a)).[2]

Certainly, Petitioner takes issue with what he characterizes as Respondents' "deliberate non-answer to [the] question" of whether he will be released upon withdrawal of U.S. combat troops in Afghanistan, and chooses to interpret what he describes as a "studiously ambiguous statement" as evidence that the government does not intend to release Petitioner upon cessation of hostilities in Afghanistan. *See* Petr.'s Opp'n at 4. Yet such an interpretation is purely speculative at this point in time. While Petitioner goes to great pains to argue that he is not asking this Court to dictate the date of the end of combat operations in Afghanistan, *id.* at 1, he clearly *is* asking this Court to predict what will happen when that date comes. Consequently, the injury Petitioner anticipates upon the cessation of hostilities in Afghanistan is not yet ripe, as there is no certainty as to when Petitioner will suffer this injury, nor that he ever will suffer this injury. Petitioner's anticipated injury is, at present, based entirely upon speculation that federal government officials will refuse to carry out their apparent legal responsibilities, which provides an insufficient basis for declaratory relief. *See Weaver's Cove Energy, LLC v. Allen*, 587 F.Supp.2d 103, 112 (D.D.C. 2008) ("The Court has no authority to grant declaratory relief based on plaintiff's speculation that defendants may, in the future . . . refuse to carry out their statutory and regulatory duties."). At this point, the chances of the claimed injury are simply unknown and the Court is presented with an abstract disagreement in need of factual development.

---

[2] If the PRB's initial review does not result in a final determination to transfer Petitioner, his case will be subject to additional reviews. *See* Exec. Order No. 13,567 at §§ 4(b), (c).

Although it may be certain that the hostilities in Afghanistan will end at some point, the injury that Petitioner might suffer at the conclusion of these hostilities is purely hypothetical at this point. As the Supreme Court has concluded, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed not occur at all.'" *Texas*, 523 U.S. at 300 (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985)). Because it is entirely possible that Petitioner may be released once the war in Afghanistan has ended and the AUMF no longer authorizes his detention, one cannot say with any degree of certainty that the issue raised by Petitioner is or, indeed, will ever, become fit for review.

With respect to the other side of the ripeness analysis – hardship to Petitioner from postponing review – the Court notes that, for purposes of his first claim, Petitioner concedes that he is currently lawfully detained pursuant to this Court's prior ruling. Pet. ¶ 17. Accordingly, the hardship suffered by Petitioner is at this point not concrete, but simply a prediction. Given the present circumstances, such potential hardship that may result from postponing review is not sufficient to tip the balance and outweigh "the competing institutional interest in deferring review." *Askins v. Dist. of Columbia*, 877 F.2d 94, 98 (D.C. Cir. 1989). Although mindful of the fact that Petitioner has been detained for more than twelve years, the Court may not ignore the requirements of Article III of the Constitution, which require a live controversy at each stage of litigation. Of course, if Petitioner ultimately learns facts or gains evidence that suggests that he will *not* be transferred upon the cessation of hostilities in Afghanistan, he may again seek review in this Court. Accordingly, any hardship to the parties of postponing review at this time does not overcome the fact that review of Petitioner's claims would be inappropriate at this time.

In arguing that his claim is presently ripe for review, Petitioner contends that courts have permitted "the filing of [habeas corpus] petitions well in advance of the asserted right of release precisely to permit the petitions to be litigated and finally decided before the release date occurs." Petr.'s Opp'n at 20. In making this argument Petitioner relies on a Supreme Court case in which the Court held that a petitioner serving consecutive prison sentences could challenge his second sentence before the conclusion of his first prison term. *Peyton v. Rowe*, 391 U.S. 54, 67 (1968). Respondents, however, contend that because the events rendering the petitioner's incarceration unlawful had occurred before the habeas petitions were filed, *Peyton* has no application to the present case, where the alleged basis for Petitioner's claim has not yet occurred. Resps.' Reply at 5. The Court agrees. *Peyton* represents a distinct scenario. There, the allegedly unlawful detention was almost certain to occur. Here, by contrast, Petitioner only speculates that his allegedly unlawful detention *will* occur – his habeas claim is contingent on events that have yet to transpire and indeed may never transpire. The other cases cited by Petitioner for this proposition are similarly inapposite. *See Edwards v. INS*, 393 F. 3d 299 (2d Cir. 2004) (Petitioner serving prison term was entitled to relief from future deportation because events entitling her to relief had already occurred); *Pearson v. Holder*, 624 F. 3d 682 (5th Cir. 2010) (Habeas petition seeking future relief after petitioner's release from prison was found to be ripe for review because events entitling him to relief had already occurred). In contrast to these cases, the events that could entitle Petitioner to relief, that he be detained unlawfully upon the cessation of hostilities in Afghanistan, have not yet occurred.

*Gon v. Gonzalez*, 534 F. Supp. 2d 118 (D.D.C. 2008), a case cited by Respondents, presents a more similar scenario to the one at issue. In *Gon*, the petitioner sought to prevent the government from extraditing him to Mexico in the future, and argued that his petition for a writ

of habeas corpus was ripe because he had signed an immigration form and speculated that he would be extradited if and when he was released from prison. *Id.* at 120. In concluding that petitioner's claim was not ripe, Chief Judge Richard W. Roberts held that the petitioner's speculation about a future extradition or deportation was "contingent on multiple future events which may not occur." *Id.* The court further held that the petitioner "present[ed] no legal support for the proposition that a *prediction* of future confinement, extradition, or deportation presents a concrete claim ripe for adjudication." *Id.* (emphasis added). Similarly, Petitioner's present claim is not ripe for adjudication because it rests on speculation and prediction about a future unlawful detention that is contingent on multiple future events that may not occur, including, but not limited to, whether the government releases him once the United States is no longer at war in Afghanistan.

Accordingly, because "judicial resources are best preserved for conflicts necessitating a resolution, rather than expended upon conflicts merely *anticipating* the need for judicial intervention," *City of Williams v. Dombeck*, 151 F.Supp.2d 9, 16 (D.D.C. 2001) (emphasis in original), ripeness doctrine counsels against addressing the merits of Petitioner's claims at this point.

### 2. Mandamus Jurisdiction

In conjunction with his request that he be released immediately upon cessation of active hostilities in Afghanistan, Petitioner also seeks an order, via writ of mandamus, that Respondents immediately design, put in place, and implement the military and administrative procedures that will assure such timely release. Pet. ¶ 44. Respondents argue, and Petitioner appears to agree, *see* Resps.' Mot. at 13, Petr.'s Opp'n at 27-28, that Petitioner's request depends upon the All Writs Act, which provides "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

principles of law." 28 U.S.C. § 1651(a). However, the All Writs Act does not enlarge this Court's jurisdiction, but rather limits the Court's authority to issue extraordinary writs "to the issuances of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999). The Supreme Court in *Clinton* noted that "[t]he All Writs Act cannot enlarge a court's jurisdiction." *Id.* at 535 (quoting 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02[4] (3d ed. 1998)). *See also Ross v. U.S.*, 460 F. Supp. 2d 139, 151 (D.D.C. 2006) (holding that "the Act itself is not a grant of jurisdiction . . . [the] statutory language makes clear that the authority to issue writs is confined to the issuance of process 'in aid of' jurisdiction that is created by some other source and not otherwise enlarged by the All Writs Act.") (internal citations omitted). In his briefing, Petitioner dismisses this precedent as beside the point, based on the incorrect assertion that this Court has jurisdiction over his habeas petition. Petr.'s Opp'n at 27-28. However, as established above, this Court presently lacks jurisdiction over the remainder of Petitioner's claim, as this request for relief is not yet ripe. In the absence of some other basis for jurisdiction, Petitioner is not entitled to the relief sought under the All Writs Act.

**B. Petitioner's Second Claim for Relief**

In his second claim, Petitioner seeks his immediate release, arguing that his continued detention under the AUMF has become punitive rather than preventative. Pet. ¶¶ 46-48. With respect to this claim this Court must decide whether Petitioner's continued detention can be justified under the AUMF. The AUMF provides:

> That the President is authorized to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Pub. L. No. 107-40, 115 Stat. 224 (2001). This provision gives the United States government the authority to detain a person who is found to have been "part of" Al Qaeda or Taliban forces. *See Awad v. Obama*, 608 F. 3d 1, 11-12 (D.C. Cir. 2010); *Al-Bihani v. Obama*, 590 F. 3d 866, 872 (D.C. Cir. 2010); *see also Barhoumi v. Obama*, 609 F. 3d 416, 423-24 (D.C. Cir. 2010). As recently as February of this year, the Court of Appeals reaffirmed that "under the Authorization for the Use of Military Force . . . individuals may be detained at Guantanamo so long as they are determined to have been part of Al Qaeda, the Taliban, or associated forces, and so long as hostilities are ongoing." *Aamer v. Obama*, 742 F.3d 1023, 1014 (D.C. Cir. 2014) (internal citations omitted). It has already been established that Petitioner was determined by this Court to have been part of the Taliban. *See Al Odah v. United States*, 648. F. Supp. 2d 1 (D.D.C. 2009), *aff'd*, 611 F. 3d 8 (D.C. Cir. 2010), *cert. denied*, 131 S. Ct. 1812 (2011). It has also been established that the hostilities in Afghanistan, though winding down, are ongoing. Although President Obama announced in late May that 2014 "is a pivotal year" in which the United States will conclude its combat mission in Afghanistan, the fact remains that as of this speech, roughly 32,000 troops were stationed in Afghanistan. Petr.'s Suppl., Ex. Z (President Obama's May 27, 2014 Remarks on Afghanistan) at 2-3. While the President expressed ambitions of having less than 10,000 troops in Afghanistan at the beginning of 2015, the hostilities in Afghanistan remain ongoing as of the date of this Memorandum Opinion. *Id.* Accordingly, Petitioner's detention remains lawful under the AUMF at this time.

In opposition to this conclusion, Petitioner argues that his ongoing detention is unlawful because the AUMF authorizes only preventative detention – detention to prevent the detainee from returning to the field of battle – and that his detention has become punitive rather than preventative. Pet. ¶ 46. Petitioner contends that his detention is not preventative because he

never engaged in actual combat and he does not pose a threat of returning to the battlefield.  *Id*. ¶¶ 36-37, 46.  Both of these arguments fail.  First, as Respondents point out, the D.C. Circuit has rejected the argument that an individual who was part of Al Qaeda or Taliban forces must have directly participated in hostilities to be legally detained.  *See Khairkhwa v. Obama*, 703 F. 3d 547, 550 (D.C. Cir. 2012) (holding that "[i]n order to detain individuals who were part of the Taliban or al-Qaeda forces, proof that the individuals also actively engaged in combat against the United States and its allies is unnecessary."); *Al-Adahi v. Obama*, 613 F. 3d 1102, 1103 (D.C. Cir. 2010) (holding that even though the petitioner insisted he "never fought against the United States", he was properly detained as "part of" Al Qaeda), *cert denied*, 131 S. Ct. 1001 (2011). The Court of Appeals has further held that detention authority is based on a "determination of whether an individual is 'part of' al-Qaida [and] 'must be made on a case-by-case basis using a functional rather than formal approach and by focusing upon the actions of the individual in relation to the organization." *Uthman v. Obama*, 637 F. 3d 400, 402 (D.C. Cir. 2011) (holding that the petitioner was properly detained based on the evidence that he "more likely than not was part of al Qaeda") (international quotation omitted).  Thus, based on precedent, this Court need not determine whether the fact that Petitioner may not have engaged in actual combat makes his prolonged detention punitive rather than preventative.  Whether or not Petitioner engaged in actual combat has no bearing on the legality of his detention so long as he has been found to have been part of Al Qaeda or Taliban forces at the time of his capture.

The Court similarly rejects Petitioner's argument that his prolonged detention has become punitive because he poses no threat of returning to the battlefield.  Respondents point out that the D.C. Circuit has "repeatedly held that the threat posed by a detainee is not a matter for the Court to address in determining the lawfulness of a detention at the time of capture in a

Guantanamo detainee's habeas case." Resps.' Mot. at 18. As Respondents accurately contend, Petitioner's arguments run counter to binding precedent precluding this Court from considering a detainee's present threat level in determining whether his detention is lawful. In *Awad*, the Court of Appeals held that "the United States's authority to detain an enemy combatant is not dependent on whether an individual would pose a threat to the United States or its allies if released but rather upon the continuation of hostilities." 608 F. 3d 1, 11 (D.C. Cir. 2010) (citing *Al-Bihani*, 590 F. 3d at 874). Accordingly, Petitioner's present threat level, or lack thereof, has no bearing on the legality of his detention so long as he has been found to have posed a threat at the time of capture.[3]

In arguing for a contrary result, Petitioner misconstrues Supreme Court precedent. Petitioner cites to *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), in support of his argument that the AUMF does not provide legal authority for the prolonged detention he is facing. Although the Court recognized that the AUMF included the "authority to detain for the duration of the relevant conflict", the plurality did note that "[i]f the practical circumstances of a given conflict are entirely unlike those of the conflicts that informed the development of the law of war, that understanding may unravel." *Id.* at 521. Petitioner argues that this language supports his argument that his detention is no longer lawful under the AUMF. Petr.'s Opp'n at 30. Petitioner, however, fails to reference the Court's very next sentence, which reads, "But that is not the situation we face as of this date. Active combat against Taliban fighters apparently are ongoing in Afghanistan." *Id.* So long as "the record establishes that United States troops are still involved in active combat in Afghanistan, [] detentions are part of the 'exercise of necessary

---

[3] In light of this binding D.C. Circuit precedent that Petitioner's detention is *not* punitive and remains preventative, the Court does not address Petitioner's argument that his detention constitutes a disproportionate punishment under Eighth Amendment principles of proportionality. *See* Petr.'s Opp'n at 33-34.

and appropriate force,' and therefore are authorized by the AUMF." *Id.* Here, although the President has made public statements regarding an impending conclusion to hostilities, the war in Afghanistan is, to this date, still ongoing.

Petitioner similarly misconstrues Justice Kennedy's statement in *Rasul*, that "as the period of detention stretches from months to years, the case for continued detention to meet military exigencies becomes weaker." 542 U.S. at 488 (Kennedy, J., concurring in the judgment). At issue in *Rasul* was whether federal district courts had jurisdiction over habeas actions of alien detainees. Accordingly, while *Rasul* held that federal courts did have jurisdiction over these cases and emphasized that indefinite detention without trial was not permitted, *Rasul* did not, as Petitioner would like this Court to believe, *see* Petr.'s Opp'n at 30-31, stand for the proposition that the legality of his detention becomes weaker over time. Indeed, the D.C. Circuit has rejected such a proposition. While mindful of Petitioner's concerns that a court's determination of Al Qaeda membership does not justify a "lifetime detention", in 2013 the Court of Appeals held that "the 2001 AUMF does not have a time limit, and the Constitution allows detention of enemy combatants for the duration of hostilities." *Ali v. Obama*, 736 F. 3d 542, 552 (D.C. Cir. 2013). The *Ali* court noted that "absent a statute that imposes a time limit or creates a sliding-scale standard that becomes more stringent over time, it is not the Judiciary's proper role to devise a novel detention standard that varies with the length of detention." *Id*.

Finally, Petitioner cites to *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), a Supreme Court case in which the Court held that alien immigration detainees could not be held indefinitely under 8 U.S.C. § 1231(a)(6). In analogizing the present case to that of the immigration detainees in *Zadvydas*, Petitioner attempts to reconcile the fact that Petitioner is a suspected terrorist by asserting that "[w]hile the Court observed in passing that the immigrant detainees in *Zadvyas*

were not suspected terrorists, that observation supplied no limiting principle in that case." Petr.'s Opp'n at 31, fn. 22. However, the *Zadvyas* Court actually made clear that its holding would not necessarily apply to cases such as this, stating that its ruling did not address cases involving "terrorism or other special circumstances where special arguments might be made for forms of preventative detention and heightened deference to the judgments of the political branches with respect to matters of national security." 533 U.S. at 696. In addition, as Respondents point out, Petitioner is not detained pursuant to 8 U.S.C. § 1231(a)(6); he is held pursuant to the AUMF. And the binding precedent construing this provision permits his detention as long as hostilities in Afghanistan continue. Resps.' Reply at 21.

In sum, Petitioner's prolonged detention is lawful under the AUMF regardless of whether or not he actively engaged in combat or presently poses a threat, and in spite of the fact that the war in Afghanistan may be ending in the coming months. The Supreme Court and the D.C. Circuit have repeatedly held that detention under the AUMF is lawful for the duration of active hostilities. Accordingly, the only question before this Court is whether the President has authority under the AUMF to detain Petitioner, and that question was addressed in the Court's previous opinion.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's [2] Petition for Writ of Habeas Corpus and Declaratory Judgment is DENIED and Respondents' [21] Response to Petition for Writ of Habeas Corpus and Motion to Dismiss or for Judgment as a Matter of Law is GRANTED. Accordingly, this action is DISMISSED in its entirety. Petitioner's first claim for relief is DISMISSED WITHOUT PREJUDICE for lack of ripeness. Petitioner's second claim

for relief is DISMISSED WITH PREJUDICE.  An appropriate Order accompanies this

Memorandum Opinion.


Dated: August 3, 2014

_____/s/_____

COLLEEN KOLLAR-KOTELLY

United States District Judge
